**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 25-1077**

_____

BRYAN WARDELL,

Plaintiff - Appellant

v.

PITT COUNTY, NORTH CAROLINA; PITT COUNTY BOARD OF COMMISSIONERS; JANIS GALLAGHER, in Her Individual Capacity; CHRISTOPHER NUNNALLY, in His Individual Capacity,

Defendants - Appellees.

_____

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  James C. Dever, III, District Judge.  (5:24-cv-00276-D-RJ)

_____

Submitted:  April 24, 2026                         Decided:  August 5, 2026

_____

Before NIEMEYER, KING, and BERNER, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**ON BRIEF:**  Artur Davis, HKM EMPLOYMENT ATTORNEYS LLP, Birmingham, Alabama, for Appellant.  Jennifer B. Milak, TEAGUE CAMPBELL DENNIS & GORHAM, LLP, Raleigh, North Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

After Bryan Wardell's employment as County Attorney for Pitt County, North Carolina, was terminated by the County's Board of Commissioners, he commenced this action against Pitt County, Pitt County Board of Commissioners, County Manager Janis Gallagher, and County Commissioner Christopher Nunnally, alleging that his employment was terminated because of his race, Black. He brought claims against (1) Pitt County alleging race discrimination, in violation of Title VII; (2) Gallagher alleging race discrimination, in violation of Title VII and 42 U.S.C. §§ 1981 and 1983; (3) Pitt County alleging race discrimination, in violation of 42 U.S.C. §§ 1981 and 1983; (4) the Board of Commissioners alleging wrongful discharge, in violation of North Carolina public policy; and (5) Nunnally alleging tortious interference with contract. By order dated January 17, 2025, the district court dismissed all of Wardell's claims under Federal Rule of Civil Procedure 12(b)(6).

On appeal, Wardell challenges specifically the district court's dismissal of his Title VII claim against Pitt County and his claims under §§ 1981 and 1983 against Pitt County and Gallagher in her individual capacity. After carefully reviewing the record and the submissions of the parties, we agree that Wardell did not allege sufficient facts to support a plausible claim of racial discrimination and therefore affirm.

I

In June 2023, the Pitt County Board of Commissioners selected Wardell to serve as County Attorney, and Wardell, the first Black person to serve in that role, began work in

2

August 2023. Wardell's employment agreement did not specify a term of employment, but the Board of Commissioners conveyed to Wardell that it anticipated a long-term employment relationship. As County Attorney, Wardell reported directly to County Manager Janis Gallagher, a White woman who had participated in hiring Wardell. Wardell's tenure with the County, however, was short, as the Board of Commissioners voted to terminate his employment in November 2023. Wardell then commenced this action.

In his complaint, Wardell alleged that the County engaged in a "recurrent pattern of racially discriminatory personnel practices" and that his termination was "inspired by . . . unlawful motives." He detailed several examples, pointing out that County officials promoted Gallagher, a White woman, who had worked in the County Attorney's office for over 20 years, over a Black man, Brian Barnett, who had worked for the County for 4 years. He also alleged that an unnamed County Commissioner told the Interim Director of Social Services, a Black man, to "speak more clearly" when he interviewed for a County position and that that same Black Interim Director had also filed an "insubordination complaint" with County Manager Gallagher, alleging that a White program director under his supervision had told him that he was "barking like a dog." And he alleged that County Manager Gallagher had made a racially charged comment to the County Sheriff, a Black woman, and that she had "failed to recommend compensation increases" for the Sheriff, while certain White officials had received pay increases. Wardell also noted in his complaint that while Pitt County is over one-third African-American, the County's leadership was, at the time he was hired, 90% White.

3

As to the termination of his employment specifically, Wardell alleged that County Manager Gallagher and Christopher Nunnally, presented "false justifications for [his] termination" to the County Board, which "effectively rubber-stamped [those] unlawfully motivated claims." Wardell also alleged that County Manager Gallagher "put limitations on the scope of his role," blocking his offer to a Black attorney to serve as an assistant county attorney. He claimed that Gallagher "blocked the hire on the ostensible grounds that new personnel had to be reserved for the next budget cycle," yet she "routinely approved other mid-budget cycle additions of personnel in departments run by white officials." He alleged that Gallagher "declined to invite" him to an annual meeting of county, municipal, and civic leaders and that she tasked him with "cultivating relationships with prominent Black figures in the community" but not "with the county's white influencers in the political, business, or civic community as previous County Attorneys had routinely done." Wardell alleged further that he identified "deficiencies" in two proposed contracts, but Gallagher declined to "defer[] to his expertise as County Attorney" and instead "steered the contracts to approval by the Board of Commissioners."

Wardell also described in his complaint how he got into a disagreement with Commissioner Nunnally regarding an expenditure for a lake and dam project. Wardell had told Nunnally that he believed the expenditure violated the North Carolina Constitution, as it involved the use of public funds to repair privately owned property. In response, Nunnally proposed a workaround, which would have involved the County's purchasing the property and designating it a County park. Wardell nonetheless maintained that the expenditure would still be unlawful. According to Wardell, Nunnally "pressured" him to

4

approve the project and told another attorney that "Wardell had deliberately misrepresented the scope of the county's legal authority."

According to the complaint, County Manager Gallagher and Commissioner Nunnally "had multiple conversations in November 2023 about the feasibility of the Board of Commissioners voting to terminate [his] contract," and on November 20, 2023, the Board, on Nunnally's motion, convened an executive closed-door session to do so. At that session, Gallagher, as County Manager, assumed the de facto role of secretary of the Board, preparing the agenda and taking minutes for the meeting. During the meeting, Gallagher characterized Wardell as "insubordinate," "unqualified," and often in conflict with County officials. Nunnally, in turn, repeated his claim that Wardell had been "dishonest" about the County's legal authority in negotiations with a local attorney. At the conclusion of the meeting, the Board voted to terminate Wardell's employment — a vote that Wardell characterized as a "rubber-stamp[]" of the recommendations made by Gallagher and Nunnally.

On May 14, 2024, Wardell commenced this action against Pitt County, the Pitt County Board of Commissioners, Pitt County Manager Gallagher in her individual capacity, and County Commissioner Christopher Nunnally in his individual capacity, alleging various claims under Title VII, 42 U.S.C. §§ 1981 and 1983, and North Carolina state law. The district court granted the defendants' motion to dismiss as to all counts, and Wardell now appeals the dismissal of his claims as to Pitt County and Gallagher.

II

We review a district court's dismissal of a complaint pursuant to Rule 12(b)(6) de novo. *Holloway v. Maryland*, 32 F.4th 293, 298 (4th Cir. 2022).

A plaintiff alleging employment discrimination "need not plead a prima facie case of discrimination under the evidentiary framework set forth in *McDonnell Douglas Corp. v. Green* . . . to withstand a motion to dismiss. *Id.* (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002)). The district court therefore erred by requiring Wardell to plead facts establishing a prima facie case of discrimination.

To survive a motion to dismiss, a plaintiff's complaint nonetheless "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The "[f]actual allegations must be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 545. In short, "[m]ere 'labels and conclusions' will not do." *Holloway*, 32 F.4th at 298 (quoting *Twombly*, 550 U.S. at 555).

In Count One of his complaint, which was brought under Title VII, Wardell alleged that County Manager Gallagher recommended his termination to the Board of Commissioners, which followed that recommendation, and that both Gallagher and the Board were, in part, motivated by Wardall's race. The district court, however, concluded that Wardell's allegations in this respect were insufficient.

6

Title VII makes it unlawful "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race."  42 U.S.C. §§ 2000e-2(a), (a)(1).  To survive a motion to dismiss on a Title VII claim for unlawful termination, a plaintiff "must allege facts sufficient to raise a plausible inference that his employer discharged him *because* of his race."  *Holloway*, 32 F.4th at 299 (citing 42 U.S.C. § 2000e-2(a)(1)) (emphasis added).

Recognizing that the Pitt County Board of Commissioners, not Gallagher, acted as the "final policymaking authority over personnel decisions," Wardell purported to allege a "cat's paw" theory of liability.  Such a theory of liability imputes "the discriminatory animus of an employee . . . onto the employer to establish causation."  *Barnhill v. Bondi*, 138 F.4th 123, 134 (4th Cir. 2025).  "To satisfy the cat's paw theory at the motion to dismiss stage, a plaintiff must plead that a coworker harboring discriminatory animus toward [him] *exercised authority over an adverse employment action* that the plaintiff suffered such that the colleague should be viewed as *the actual decisionmaker* principally responsible for the adverse action."  *Id*. (emphasis added) (citations omitted).

But here, Wardell failed to plausibly allege that Gallagher was the "actual decisionmaker."  As Wardell's complaint acknowledges, the Board acted as the "final policymaking authority" over personnel matters, and it was the Board that voted to terminate Wardell's employment on November 20, 2023.  Gallagher served only as the secretary at that session.  To be sure, as Wardell alleged, Gallagher offered several race-neutral justifications for his termination, including that he had been "insubordinate" to her,

7

proved to be "unqualified," and had been "in conflict" with County leadership, there is no allegation that she was the actual decisionmaker. While Wardell did make the conclusory allegation that the Commissioners effectively "rubber-stamped" her recommendation, he does not plead facts sufficient to support an inference that Gallagher was "principally responsible" for the decision. *See Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 410–11 (4th Cir. 2013) (theory of liability unsatisfied where a discriminating employee substantially influenced the actual decisionmaker, but was not principally responsible for the decision); *see also Barnhill*, 138 F.4th at 134 ("[W]here committee members exercising authority over an adverse action the plaintiff suffered acted together in making the decision . . . the plaintiff [must] show that the committee members harbored discriminatory animus toward them" (citations omitted)).

Moreover, Wardell's allegations of Gallagher's animus are only speculative and conclusory. Most of his allegations described Wardell's disagreements with Gallagher's management style. For example, she declined to invite him to an annual networking event; and she disagreed with him over the purported "deficiencies" of two proposed contracts. But the "[l]aw does not blindly ascribe to race all personal conflicts between individuals of different races." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 282 (4th Cir. 2000).

Wardell also contends that Gallagher declined to hire another assistant county attorney outside of the budget cycle when she learned that the preferred candidate was Black. Wardell, however, provides no facts, beyond mere speculation, to support this claim.

8

Wardell further alleges that Gallagher "belittle[d] the competence of the county's Black female Sheriff . . . on several occasions" and once made a "racially charged comment" from Gallagher that the Sheriff "would not have spoken to [a vendor]" in a certain way "if she had been a white woman." The alleged comment was directed at *someone else* at *some unspecified time* and *unrelated to the employment decision in question* and therefore does not provide a plausible basis to impute racial animus to Gallagher's recommendation to terminate Wardell, whom she participated in hiring.

And as to the Board, the complaint fails to allege facts sufficient to raise "a right to relief above a speculative level." *Twombly*, 550 U.S. at 545. Accordingly, we affirm the dismissal of his Title VII claim.

Turning next to Counts Two and Three, which alleged racial discrimination claims under 42 U.S.C. §§ 1981 and 1983 against Gallagher in her individual capacity and against Pitt County, Wardell fares no better.

Section 1981 prohibits racial discrimination in the making or enforcing of contracts by providing that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a); *see also CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 445 (2008). And "[t]o succeed on a § 1981 claim, 'a plaintiff must ultimately establish both that the defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest.'" *Nadendla v. WakeMed*, 24 F.4th 299, 305 (2022) (quoting *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006)). More specifically, a "plaintiff must also show that the interference with a

9

contractual interest would not have happened *but for the plaintiff's race*." *Id.* (emphasis added) (citing *Comcast Corp. v. National Ass'n of African American-Owned Media*, 589 U.S. 327, 340 (2020)).

Although Wardell correctly points out that the district court "overlooked the individual claim against Gallagher in Count [Two]," the count nonetheless fails for the same reasons as does Wardell's Title VII claim — it lacks sufficient allegations to support a reasonable inference that Gallagher "intended to discriminate on the basis of race" when recommending his termination to the Board, let alone sufficient facts to support an inference that race was the "but for" cause of the Board's decision to terminate his employment. *See Nadendla*, 24 F.4th at 305–306 (affirming grant of motion to dismiss on § 1981 claim where complaint included only general allegations and "factual details regarding race [were] conspicuously absent").

And as to the claim against Pitt County in Count Three, "[a] municipality may not be held liable for its employees' violations of § 1981 under a *respondeat superior* theory." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989). Instead, 42 U.S.C. § 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Id.* A county government may only be held liable under § 1983 if the plaintiff plausibly alleges the "policy or custom" of that government caused the violation of the plaintiff's federally protected rights. *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 690 (1978). Such a "policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a

10

person with final policymaking authority; (3) through an omission, such as a failure to properly train officers that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law." *Lytle v. Doyle*, 326 F.3d 463, 471 (2003) (cleaned up). Moreover, as required by § 1983, a "plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 411 (1997); *see also City of Canton v. Harris*, 489 U.S. 378, 389-90 (1989). Even if a plaintiff alleges sufficient facts to support the requisite final policymaking authority under state law, there is no respondeat superior liability for local governments, so the "plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Brown*, 520 U.S. at 411; *see also Riddick v. Sch. Bd. of City of Portsmouth*, 238 F.3d 518, 524 (4th Cir. 2000).

Wardell failed to allege any impermissible policy or custom that was used to terminate his employment. While he does allege that the Board, acting as the final decisionmaker, voted to terminate his employment, he failed to plead that the Board acted with racial animus or that the Board made the decision with "deliberate indifference to the risk that a violation of a particular constitutional or statutory right" would follow the decision. *Brown*, 520 U.S. at 411. And "[d]eliberate indifference is a very high standard — a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)). He simply alleged that Gallagher provided several race-neutral justifications for her recommendation

11

to terminate Wardell's employment — including that he was insubordinate, unqualified, and in conflict with County leadership — and that the Board followed the recommendation, "rubber-stamping" it.   But the complaint does not include any allegation that an impermissible policy or custom played any role in the Board's decision to terminate his employment.

*       *       *

Accordingly, we affirm the district court's January 17, 2025 order granting the defendants' motion to dismiss Wardell's complaint.   We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

AFFIRMED

12